_____ FILED_____ ENTERED
_____ LODGED_____ RECEIVED

FEB 2 1 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION | : |
| OF THE UNITED STATES | : NOS. |
| OF AMERICA FOR A SEARCH WARRANT | : |
| REQUIRING DISCLOSURE OF | : |
| HISTORICAL CELLULAR SITE INFO. | : |

19 - 0 4 7 4 BPG

19 - 0 4 7 5 BPG

19 - 0 4 7 6 BPG

19 - 0 4 7 7 BPG

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT
### REQUIRING DISCLOSURE OF HISTORICAL CELLULAR SITE INFORMATION

Sung Kim, Special Agent with the Federal Bureau of Investigation ("FBI") being duly sworn, states:

1.     This affidavit is being submitted in support of an application for a search warrant to search the records of AT&T, Sprint, T-Mobile, and Verizon Wireless ("the Service Providers") to disclose certain records and other information pertaining to the cellular telephone towers described in Part I of Attachment A.  The records and other information to be disclosed are described in Part II of Attachment A.

2.     The applied for warrant would authorize the analysis of the transactional records for the purpose of identifying the individuals responsible for the armed robberies at the specified locations described in this affidavit, by members of the FBI, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation.  Rather, I have set forth only those facts that I believe are necessary to establish probable cause.  I have not, however, excluded any information known to me that would defeat a

1

determination of probable cause. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, cooperating sources, telephone records, and reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951 - Hobbs Act Robbery, and 18 U.S.C. § 924(c) – Possession of a Firearm During and in Relation to a Crime of Violence, have been committed by the unknown subjects described herein. There is also probable cause to believe that a search of the cell tower data as described below and in Attachment A will result in identification of the subjects and the recovery of items constituting evidence of these criminal violations.

## AGENT BACKGROUND

5.     I am a Special Agent of the Federal Bureau of Investigation and am currently assigned to a Maryland Joint Violent Crime Task Force comprised of FBI agents, detectives from the Baltimore Police Department (BPD), Baltimore County Police Department (BCDP) and from the Ann Arundel County Police Department (AAPD). I have worked for the FBI since 2008 and have participated in numerous investigations focusing on violent crimes, to include, bank robberies, Hobbs Act robberies, kidnappings, extortions, and fugitives. I have also participated in the execution of numerous state and federal search and arrest warrants involving violent offenders.

## PROBABLE CAUSE

6.     The FBI, BPD, BCPD, and AAPD are conducting an investigation of series of armed commercial robberies that have occurred since December 10, 2018. I believe that these

2

armed robberies were committed by the same Subjects. A review of available surveillance video indicate that the robberies appeared to be related based upon the description of the Subjects, articles of clothing and accessories worn by the Subjects, the weapons used by the Subjects, the manner in which the robberies were committed, and the property taken.

7.      On December 10, 2018, at approximately 9:29 p.m., two male Subjects entered the Popeye's restaurant located at 3400 Pulaski Highway, Baltimore, Maryland 21224. Upon entering the establishment, Subject 1 put a dark colored handgun to Victim 1's back and stated "Open the register!" Victim 1 complied and opened the register and Subject 2 came and took all the money that was inside the register. Upon taking U.S. currency, the Subjects fled the establishment. This incident was captured on store surveillance video.

8.      On December 12, 2018, at approximately 6:48 p.m., three male Subjects entered the Dollar General store, located at 717 Washington Boulevard, Baltimore, Maryland 21230. Upon entering the establishment, Subject 1 pointed a handgun at Victim 2 and demanded to open the cash register. Victim 2 complied with Subject 1's demands and opened the two cash registers. After Victim 2 opened the cash registers, Subjects 1 and 2 took all the money from the registers and demanded Victim 2 to open the safe that was located behind the counter. Victim 2 advised the subjects that the safe has a timer with a nine minute delay after the combination is put in. As Victim 2 attempted to open the safe, Subject 1 put the gun on her shoulder and said "take your time and don't mess up or I'll end you." When Witness 1 came out of the store office, the subjects fled the scene with U.S. currency. According to other witnesses who were customers at the store, while Subjects 1 and 2 were engaging Victim 2 at the cash register, Subject 3 was engaging the customers and ordered them to be still and not move. Upon taking U.S. currency, the Subjects

fled the establishment. This incident was captured on store surveillance video.

9.      On December 12, 2018, at approximately 7:41 p.m., three black male Subjects entered the Dollar General store located at 4101 Pulaski Highway, Baltimore, Maryland 21224. Upon entering the establishment, the Subjects were immediately confronted by Victim 3 to remove their hoods and their masks. During that time, Subject 1 displayed a dark colored handgun, and Subjects 2 and 3 demanded Victim 3 to open the safe behind the counter. Victim 3 advised the subjects that the safe had a timer and she was told that she had seven seconds to open the safe. The subjects then went to the rear of the store and ordered Victims 4 and 5 to the front of the store and demanded that they open the cash registers. While the Subjects were taking U.S. currency from the register and the safe, Witness 2 observed the incident, ran out towards the side of the building, and triggered the store alarm. The Subjects then fled the establishment. This incident was captured on store surveillance video.

10.     On December 13, 2018, at approximately 7:18 p.m., two black male subjects entered the Dollar General store located at 2511 Greenmount Avenue, Baltimore, Maryland 21218. Upon entering the establishment, Subject 1 displayed a dark colored handgun and told Victim 6 to open the cash register. Subject 2 then approached Victim 6 and stated "calm down and open the cash register." When Victim 6 complied and opened the register, Subject 2 took all the money from inside the register. Subjects 1 and 2 fled the establishment. This incident was captured on store surveillance video.

11.     On December 13, 2018, at approximately 8:00 p.m., two black male subjects entered MetroPCS, located at 700 Merritt Boulevard, Dundalk, Maryland 21222. Upon entering the establishment, Subject 1 displayed a dark colored handgun, and Subject 2 came around the

counter and demanded Victim 7 to give them money from the cash register.  The Subjects then took Victim 7 to the rear of the store and ordered him to open the safes.  Victim 7 complied and opened a safe containing cell phones.  Upon taking U.S. currency and cell phones, the Subjects ordered Victim 7 to open the back door and the Subjects fled the establishment through the back door.  This incident was captured on store surveillance video.

12.     On December 19, 2018, at approximately 6:18 p.m., two black male Subjects entered the Boost Mobile store located at 1209 West Pratt Street, Baltimore, Maryland 21223. Upon entering the establishment, Subject 1, holding a dark colored handgun, grabbed Victim 8 and stated, "We are not here for you," and Subject 2 demanded Victim 8 to open the cash register. Victim 8 complied with the Subjects' demands and opened two cash registers.  Upon taking U.S. currency, the Subjects fled the establishment.  This incident was captured on store surveillance video.

13.     On December 20, 2018, at approximately 7:37 p.m., three black male Subjects entered the T-Mobile store located at 5400 Belair Road, Baltimore, Maryland 21206.  Upon entering the establishment, the Subjects spread-out throughout the store while Subject 1 demanded Victim 9 to open the cash register.  Subject 1 implied to Victim 9 that he was armed with a handgun and removed money from the opened registers.  Upon taking U.S. currency, the Subjects fled the establishment. This incident was captured on store surveillance video.

14.     On January 4, 2019, at approximately 7:55 p.m., two black male subjects entered the Boost Mobile store located at 1223 Eastern Boulevard, Essex, Maryland 21221. Upon entering the establishment, Subject 1 assaulted Victim 10 by striking his head with a handgun.  A tussle ensued briefly between Subject 1 and Victim 10 but eventually came to a halt when Subject 1

pointed a dark colored handgun at Victim 10's face and demanded that he open the cash register. At one point, Subject 1 took a loaded magazine out to show Victim 10 that he had a real gun. After Victim 10 complied and opened the cash register, Subjects 1 and 2 took U.S. currency and fled the establishment. This incident was captured on store surveillance video.

15.    On January 7, 2019, at approximately 5:45 p.m., two black male Subjects entered the Boost Mobile store located at 624 Cherry Hill Road, Baltimore, Maryland 21225. Upon entering the establishment, Victim 11 requested that the Subjects remove the masks from their faces. Subject 1 then pulled out a dark colored handgun, pointed the gun at Victim 11, and stated, "We don't want to hurt you, don't do anything stupid." Victim 11 complied and Subject 2 took money from the two cash registers. Upon taking U.S. currency, the Subjects fled the establishment. This incident was captured on store surveillance video.

16.    On January 11, 2019, at approximately 7:41 p.m., two black male Subjects entered the Metro PCS store located at 7553 Ritchie Highway, Glen Burnie, Maryland 21061. Upon entering the establishment, Subject 1 pointed a dark colored handgun at Victim 12, demanding money from the cash register while Subject 2 approached the cash register around the counter. Upon taking U.S. currency, the Subjects fled the establishment. This incident was captured on store surveillance video.

17.    On January 19, 2019, at approximately 7:24 p.m., two black male Subjects entered the Dollar General store located at 2401 Belair Road, Baltimore, Maryland 21213. Upon entering the establishment, Subject 1 pointed a handgun at Victim 13, while Subject 2 walked around the counter and approached the cash register and stated "open the register, hurry up!" Upon taking U.S. currency, the Subjects fled the establishment. This incident was captured on store

surveillance video.

18.     Each of the above referenced incidents involved goods received and sold in interstate commerce.

19.     There is probable cause to believe that the same Subjects committed all of the robberies described above.  In each robbery, the surveillance footage shows that the Subjects are two to three black males with similar physical characteristics wearing similar clothes.  For example, in all of the robberies, one of the Subjects wears a very distinctive dark colored hoodie with white strings hanging from the hoodie.  The same Subject also wears dark tightly formed jeans with dark shoes and walks in a very distinctive manner.  The other Subjects are covering their faces with a dark or white skull masks, dark-colored jackets, and purple or dark gloves.  In addition, the Subjects are brandishing what appears to be the same weapon - a dark, semi-automatic handgun.

20.     Based on my knowledge, training, and experience, I know that most individuals commonly carry cell phones with them at all times (see *Riley v. California*, 134 S. Ct. 2473, 2490 (2014) (citing one 2013 poll in which three-quarters of smart phone users report being within five feet of their phones most of the time)), and that individuals involved with firearms offenses and Hobbs Act robberies frequently use those cell phones and other communication devices to further their illegal activities.  I know that it is common for subjects to communicate via cellphone before, before, during and after a robbery has been committed in order to coordinate their planning and commission of the robbery as well as to coordinate their flight from the scene of the crime.  I have investigated multiple Hobbs Act robberies in which the subjects have used two way communications and believes that is likely that the subjects in the above described robberies did the same.

21.     Based on the above, your affiant believes the information requested in the search warrant can assist in identifying the subjects or subjects and as evidence in court for the crime of Hobbs Act Robbery.

## FACTS ABOUT CELL TOWERS IN GENERAL

22.     Many cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity.  These cell towers allow the wireless devices to transmit or receive communications, such as phone calls, text messages, and other data.  The tower closest to a wireless device does not necessarily serve every call made to or from that device.

23.     In addition to a unique telephone number, each cell phone is identified by one or more unique identifiers.  Depending on the cellular network and the device, the unique identifiers for a cell phone could include an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").

24.     Cellular service providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower.  For each communication, these records may include the telephone call number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or

was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device; and the type of communication transmitted through the tower (such as phone call or text message).

## PURPOSE OF THE SEARCH

25.     Based on the time of each robbery and the distance between each store, it is likely that only the subject(s) mobile devices would have used the towers that served the areas near each of the commercial businesses described above. Identifying a mobile device that used those towers on the specified date and times would lead to the identification of the subjects. Each of the subjects' mobile devices would have a unique telephone number and Electronic Serial Number ("ESN"), which is registered to a respective carrier. The carrier would have identifying subscriber information, which can be used to identify the individual utilizing a specific mobile device. Upon identification of a mobile device, your affiant will obtain a subpoena to obtain the subscriber information from the respective carrier to further the investigation.

## REQUEST FOR A SEARCH WARRANT

21.     Given the facts set forth above, your affiant has probable cause to believe the records described in Attachment A would identify which wireless devices were in the immediate vicinity of the addresses listed in Attachment A around the time the robberies occurred in June 2018. This information, in turn, will assist law enforcement in determining the wireless devices utilized by the subjects.

22.     WHEREFORE, I respectively request that the Court issue a warrant authorizing members of the FBI, or their authorized representatives, including but not limited to other law

19 - 0 4 7 4 BPG          19 - 0 4 7 5 BPG
19 - 0 4 7 6 BPG                   19 - 0 4 7 7 BPG

enforcement agents assisting in the above described investigation, to analyze the records, as

described in Attachment A, for the purpose of identifying the individual responsible for the armed

robberies described above.

_____

Sung Kim
Special Agent
Federal Bureau of Investigation


Sworn to before me on this ____7th____ day of February 2019.


_____

BETH P. GESNER
UNITED STATES MAGISTRATE JUDGE

19 - 0 4 7 4 BPG     19 - 0 4 7 5 BPG

19 - 0 4 7 6 BPG

ATTACHMENT A

19 - 0 4 7 7 BPG

## I.    The Cell Towers

This warrant applies to certain records and information associated with cellular telephone

towers ("cell towers") that provide coverage to the following areas at the listed date and times:

| Location | Dates | Times |
|---|---|---|
| 3400 Pulaski Highway Baltimore, Maryland 21224 | December 10, 2018 | 09:00 p.m. through 09:40 p.m. (EST) |
| 717 Washington Blvd Baltimore, Maryland 21230 | December 12, 2018 | 06:15 p.m. through 07:00 p.m. (EST) |
| 4101 Pulaski Highway Baltimore, Maryland 21224 | December 12, 2018 | 07:10 p.m. through 07:55 p.m. (EST) |
| 2511 Greenmount Ave Baltimore, Maryland 21218 | December 13, 2018 | 06:45 p.m. through 07:30 p.m. (EST) |
| 700 Merritt Blvd Dundalk, Maryland 21222 | December 13, 2018 | 07:30 p.m. through 08:15 p.m. (EST) |
| 1209 West Pratt St. Baltimore, Maryland 21223 | December 19, 2018 | 05:55 p.m. through 06:38 p.m. (EST) |
| 5400 Belair Road Baltimore, Maryland 21206 | December 20, 2018 | 07:07 p.m. through 07:52 p.m. (EST) |
| 1223 Eastern Blvd Essex, Maryland 21221 | January 4, 2019 | 07:25 p.m. through 08:10 p.m. (EST) |
| 624 Cherry Hill Road Baltimore, Maryland 21225 | January 7, 2019 | 05:15 p.m. through 06:00 p.m. (EST) |
| 7553 Ritchie Highway Glen Burnie, Maryland 21061 | January 11, 2019 | 07:10 p.m. through 07:55 p.m. (EST) |
| 2401 Belair Road Baltimore, Maryland 21213 | January 19, 2019 | 06:55 p.m. through 07:40 p.m. (EST) |

## II.    Records and Other Information to Be Disclosed

For each cell tower described in Part I of this Attachment, the Service Providers named in

the Search Warrant are required to disclose to the United States all records and other information

11

(not including the contents of communications) about all communications made using the cell tower during the corresponding timeframe(s) listed in Part I, including the records that identify:

A.  the telephone call number and unique identifiers for each wireless device in the vicinity of the tower ("the locally served wireless device") that registered with the tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

B.  the source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that called, or was called by, the locally served wireless device);

C.  the date, time, and duration of each communication;

D.  the "sectors" (i.e. the faces of the towers) that received a radio signal from each locally served wireless device; and

E.  the type of communication transmitted through the tower (such as phone call or text message).

These records should include records about communications that were initiated before or terminated after the specified time period, as long as part of the communication occurred during the relevant time period identified in Part I.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by [Provider], and my official

title is _____. I am a custodian of records for [Provider]. I state

that each of the records attached hereto is the original record or a true duplicate of the original

record in the custody of [Provider], and that I am the custodian of the attached records consisting

of _____ (pages/DVDs/terabytes). I further state that:

   a.   all records attached to this certificate were made at or near the time of the

        occurrence of the matter set forth, by, or from information transmitted by,

        a person with knowledge of those matters;

   b.   such records were kept in the ordinary course of a regularly conducted

        business activity of [Provider]; and

   c.   such records were made by [Provider] as a regular practice.

   I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.


_____          _____
Date                               Signature